# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROLAND JOHNSON,

          Plaintiff,

    -vs-                                   Case No. 09-C-248

MANITOWOC COUNTY, CALUMET COUNTY,
JERRY PAGEL, WILLIAM TYSON, MARK
WIEGERT, WENDY BALDWIN AND
JOHN DEDERING,

          Defendants.

# DECISION AND ORDER

The plaintiff, Roland Johnson, ("Johnson") owns a trailer and garage located at 12932 Avery Road, Two Rivers, Wisconsin. Johnson rented the property to Stephen Avery, the convicted murderer of Teresa Halbech.[1] Law enforcement authorities executed a series of search warrants directed at Johnson's property in the course of their investigation into the Halbech murder. The officers executing the warrants took, and have yet to return, a number of Johnson's personal items. The officers also damaged Johnson's property by removing carpet sections and wall paneling in the trailer, cutting "swatches" from a couch, and jackhammering the concrete floor of the garage.

---

[1] Carrie Antlfinger, *Avery Convicted of Murdering Photographer*, Janesville Gazette, March 19, 2007.

Johnson brings claims pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth, and Fourteenth Amendments. Johnson also brings a variety of supplemental state law claims. The defendants move for summary judgment. This motion is granted.

**BACKGROUND**

Avery was prosecuted in Manitowoc County, but the investigation into Halbech's murder was led by the Calumet County Sheriff's Department. The investigation focused on the trailer where Avery lived along with the garage and the surrounding land and/or structures around the trailer and garage. Johnson was not present at any time during any of the searches. At all relevant times, Jerry Pagel was the sheriff of Calumet County. Sheriff Deputies William Tyson, Mark Wiegert, Wendy Baldwin and John Dedering executed the search warrants on Johnson's property.

Each item seized by the officers correlates to a specific search warrant. The March 1, 2006 warrant commanded the officers to search for and return knives, bullet fragments, human blood and other genetic material, cleaning supplies, bedding, mattresses, "or any other items upon which blood may have sprayed, dripped or otherwise adhered to including, but not limited to, the concrete floor." Other warrants were more expansive, ranging from instrumentalities "capable of taking human life" to objects used to "wrap or encase a body" or to hide or distribute a human body to "[a]ny other items which officers identify as being related to the investigation of the disappearance or homicide of Teresa M. Halbech . . ."

The officers identified several areas of the garage floor where they intended to conduct their search and put circles around those areas. The officers were looking for blood,

which had seeped through the cracks in the concrete floor. The officers jackhammered an area of the garage floor approximately 8 feet long and 2 feet wide. The amount of concrete removed from the garage was relatively small, but the damage to the garage floor was so extensive that the only way to repair the floor is to lift the building and replace the entire floor. The officers used a jackhammer because the use of shovels or hand tools either would not have worked or would have delayed the investigation. Johnson contends that the officers could have used a carbide or diamond saw to cut smaller patches in the concrete.

The only damage to the structure of the trailer was to the main door. The officers removed two or three sections of paneling from the bedroom. The officers removed, but did not seize, certain personal items in the garage to inspect the garage floor, but returned them to the garage in reasonable order. The officers removed about half of the hallway carpeting and the carpeting in the bedroom. The officers removed small swatches from the couch. Johnson claims that the combination of damage to the trailer and garage, missing items of personal property, and Johnson's financial inability to afford repairs makes the trailer unusable for Johnson, except that if he decides to "rough it" the trailer is usable for a night at a time. Johnson concedes that he can still use the property for recreational activities like hiking or walking or for purposes of storage (including his boat).

Avery was convicted in 2007 and sentenced to life imprisonment. Avery's postconviction motion for a new trial was denied on January 25, 2010, and the matter is currently pending on appeal. *State of Wisconsin v. Stephen Avery*, 05 CF 381 (Circuit Court, Manitowoc County).

The collected items that were used as evidence are in the possession of the Manitowoc County Clerk of Courts. The remaining items are in the possession of the Calumet County Sheriff's Department. Seized items may be returned upon authorization of the District Attorney that the evidence is no longer needed and that it may be released. About two years ago, Johnson called the Calumet County Sheriff's Department and spoke with the Sheriff's secretary because he "wanted to know who was responsible for damages and what I do to get my property back." Johnson also approached Deputy Weigert and requested a list of items that were taken from his property.

Johnson filed Notice of Injury and Notice of Claims pursuant to Wis. Stat. § 893.80 with Calumet and Manitowoc Counties. Johnson has not pursued any Wisconsin state statutory or common law remedies, including Wis. Stat. §§ 968.20, 973.20, or the Crime Victim Compensation Fund under Chapter 949. Johnson did not file any request for restitution or any type of application or petition seeking the return of his property. Johnson never approached the District Attorney to see if any of his items could be returned.

**ANALYSIS**

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence

-4-

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**I.      Fourth Amendment**

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The touchstone of Fourth Amendment inquiry is reasonableness, a standard measured in light of the totality of the circumstances and determined by balancing the degree to which a challenged action intrudes on an individual's privacy and the degree to which the action promotes a legitimate government interest. *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005) (citing *United States v. Knights*, 534 U.S. 112, 118-19 (2001)). The reasonableness requirement, and the totality of the circumstances inquiry, extends to the manner in which a search is conducted. *Id.* (citing *United States v. Banks*, 540 U.S. 31, 35 (2003)). It is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United States*, 441 U.S. 238, 257 (1979). The test is whether "the officers executing the warrant employed a methodology that is, in light of the values protected by the Fourth Amendment and the exigencies of the situation, a reasonable one." *United States v. Jones*, 54 F.3d 1285, 1292 (7th Cir. 1995).

Johnson argues that the use of a jackhammer on his garage floor offends the reasonableness standard of the Fourth Amendment. He contends that a diamond or carbide-

bladed saw would have been less destructive. Reasonableness is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Use of a jackhammer was reasonable. The Fourth Amendment does not require use of the least destructive means to execute a search warrant.

A Ninth Circuit case is instructive on very similar facts. In *United States v. Becker*, 929 F.2d 442 (9th Cir. 1991), officers executing a search warrant on a residence noticed a newly-poured concrete pad. The defendant admitted that the concrete was poured after a search warrant was executed on a neighboring home. Agents then rented a jackhammer and removed portions of the concrete slab. Pieces of aluminum foil were discovered under the concrete and seized. The foil tested positively for the presence of methamphetamine. The Ninth Circuit held that the manner of the search was reasonable. The agents "had ample reason to believe that the concrete slab was being utilized to hide the very evidence they were legally on the premises to find. The only way to obtain this evidence was to use a jackhammer to break up the concrete." *Id.* at 447. Just like in *Becker*, the officers needed to get under the concrete somehow, and the choice of a jackhammer was a reasonable choice. The Ninth Circuit did not consider the possible use of a less destructive device, but the holding and reasoning of *Becker* is still on point.

Johnson cites *Lawmaster v. Ward*, 125 F.3d 1341 (10th Cir. 1997), but this case is distinguishable. In *Lawmaster*, the Tenth Circuit held that the officers' conduct of leaving the defendant's pistol submerged in a dogs' water bowl and leaving cigar and cigarette ashes in his bedding was not "reasonably necessary to carry out the warrant's purpose to search for

-6-

and seize a machine gun and parts." *Id.* at 1349-50. Conversely, the use of a jackhammer was reasonably necessary to carry out the warrant's purpose to search for blood under the concrete in Johnson's garage. Notably, the *Lawmaster* court also held that the officers did not act unreasonably in breaking the locks on a gun vault. "Here, because the Agents had to examine the contents of the gun vault, such conduct was reasonably necessary to carry out the purposes of the warrant and did not violate Mr. Lawmaster's Fourth Amendment rights." *Id.* at 1350 n.3.

Finally, Johnson's claims as they relate to the seizure and refusal to return his personal property are invalid under the Fourth Amendment. "Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable. The [Fourth] amendment then cannot be invoked by the dispossessed owner to regain his property." *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003).

## II.  **Fifth Amendment**

The Takings Clause of the Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause is made applicable to the States by the Fourteenth Amendment. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 472 n.1 (2005). Johnson argues that his claims which relate to the indefinite seizure of personal items and the damage done to his trailer and the surrounding property are appropriately brought under the Takings Clause. Johnson is mistaken.

The Takings Clause does not apply when property is seized, retained, damaged or destroyed during the course of a criminal investigation. When the government executes a search warrant in the course of investigating a crime, it is acting pursuant to its police powers, and any collateral damage to private property does not implicate the Takings Clause. *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause"). If the "government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment." *Id.* (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)); *see also Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("When property has been seized pursuant to the criminal laws or subjected to *in rem* forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation"); *United States v. $7,990.00 in United States Currency*, 170 F.3d 843, 845 (8th Cir. 1999) ("the forfeiture of contraband is an exercise of the government's police power, not its eminent domain power"). Although it might seem unfair for the government to damage or to seize indefinitely an innocent person's property, when the government acts pursuant to its police power, there is no remedy under the Fifth Amendment.

### III. Substantive Due Process

Johnson argues that the use of a jackhammer on his garage floor violates substantive due process under the Fourteenth Amendment. Challenges to the "reasonableness of a search by government agents clearly fall under the Fourth Amendment, not the Fourteenth." *Conn*

*v. Gabbert*, 526 U.S. 286, 293 (1999). Therefore, the Court's Fourth Amendment analysis forecloses Johnson's claim under the substantive due process framework. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994) (where actions clearly fall within the ambit of those activities regulated by the Fourth Amendment, there is "no need for the district court to further analyze the case under the strictures of the Fourteenth Amendment").

Even assuming that substantive due process analysis is appropriate, the destruction of Johnson's garage floor with a jackhammer was not so arbitrary or irrational that it "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). It is only "*deliberate* action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment: '[C]onduct *intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" *Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003) (quoting *Lewis*, 523 U.S. at 849) (emphases in original). Obviously, the Court's Fourth Amendment analysis is redundant here. Use of the jackhammer was justified by the government's legitimate interest in gathering evidence in the course of a criminal investigation.

Finally, Johnson's claim relates to a state-created property interest. When "the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." *Kauth v. Harford Ins. Co. of Ill.*, 852 F.2d 951, 958 (7th Cir. 1988). Such is the case here.

-9-

## IV. Municipal Liability

Johnson attempts to state a claim against Manitowoc County and Calumet County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, a municipality's liability for a constitutional injury requires a finding that an individual officer is liable on a substantive claim. *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000). In the absence of a valid underlying claim, Johnson's *Monell* claims must also fail.

## V. State law claims

Johnson asks the Court to take jurisdiction over his state law claims. The general rule is that when the federal claims drop out before trial, the district court should relinquish jurisdiction over the supplemental claim. *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997); 28 U.S.C. § 1367(c)(3). The presumption in favor of dismissal is strong because once the federal claims give way, "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998). The Court sees no reason to depart from this well-established rule.

It must also be noted that one of Johnson's state law claims seeks the return of his property pursuant to Wis. Stat. § 968.20 (Return of property seized). If Avery is granted a new trial, it is possible that the District Attorney may have to rely upon evidence that was seized from Johnson's property, even evidence that wasn't used in the first trial. It would be unseemly for a federal court to assert jurisdiction over property that is potentially relevant to an ongoing state court prosecution. *Cf. Nommensen v. Lundquist*, 630 F. Supp. 2d 994,

997 (E.D. Wis. 2009) (*Younger* abstention warranted when state court proceedings were pending on appeal). In the Court's view, this is a "compelling reason" to relinquish jurisdiction over the pendent state law claims. § 1367(c)(4). It should be for the state courts, particularly the circuit court in Manitowoc County, to guard the disposition of this evidence.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment [D. 29] is **GRANTED**; and

2. This matter is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 11th day of May, 2010.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**